Just so I understand, Mr. Rosmahan, you're going to argue 10 minutes for the amicus, is that correct? That's correct, Your Honor. And then you'll be arguing, Mr. Paradis, 20 minutes, including your rebuttal time for the government? For Mr. Al-Nashiri, represented by government counsel. All right. If it pleases the Court, my clients certainly thank the Court for accepting our amicus brief and for allowing us the privilege of voicing their concerns, which rise to a legal issue which the Court must now resolve. Perhaps allowing argument by these amicus was urged because of who they are. They are admirals and generals retired and other colonels and military people who have had, I want to say, hundreds of years of military experience, which included being responsible for the lives of the men and women who were under them, and that's what motivates them to write this brief. If that be true, it seems that an acute examination of the legal issues would be as well deserved here as any of the other cases that the Court must hear. And what happened in this case is not in doubt. The attack on the coal was 2000. The arrest of this plaintiff was 2002. And the President of the United States and Congress, for that matter, did not declare hostilities until September 19th of 03, when President Bush announced that he had placed troops in several countries in hostilities, including Yemen. The question before you is whether the rights and privileges and the responsibilities of the President and the Congress are to be upheld in this case. I realize that that sounds grandiose even as I say it. I was an airman's second, if the Court please. But that is what the issue is in this case. And the Constitution, there's no time and no need to explain the hundreds of years of experience that led the founders to say what they said as to who declares war and who starts hostilities because of the implications when that happens. Because people leave their homes, they leave their bases, and they are put in what is called harm's way. The Article 1, Section 2, Section 11 says that the Congress will declare war. It's very, very clear. And the President, in Section 2 of Article 2, President shall be Commander-in-Chief of the Army and Navy of the United States and of the militia of the several states when called. So the Constitution is very clear as to who can do that. And modern arguments and adjustments about out of the Vietnam War, whether a declaration of war and all of that is not involved here. The reverse is involved here. Here is the President of the United States, President Clinton, was very clear when the call happened, we are not at war. He was very clear in telling the Congress, I have sent a few troops to Yemen. Their only purpose is to protect the call for security purposes. This country, the highest political level, was not at war, and we were not at hostilities. And now there is a man who is held before a military commission on the basis that their jurisdiction arises because there were hostilities as found by a person who is before the court in the Defense Department. If that does not shake our concern about the structure of this procedure, then there would be very few things that would, if the court pleased. So there are cases, sometimes you worry about citing old cases. I'm not worried about citing these old cases. The cases, the protector and the prize cases, both hold correctly by the U.S. Supreme Court that it is the President who must declare when hostilities occurred. Both of these cases in different ways had to do with the Civil War. When did it start and when did it end? My question, Mr. Brosnahan, is that accepting all of this is true and accepting these retired militaries' view as to whether or not there were hostilities doesn't really answer the question as to whether this court should make that as a threshold determination. Maybe you want to leave this to Mr. Al-Mashiri's counsel, but in a situation where we now have a process where whatever the military commission decides in terms of hostilities in or out would be able to go up to the D.C. Circuit and ultimately the Supreme Court. What you're asking us to do is really to start a parallel path. Not really, if the Court pleases. The case is here. I will say, based on my experience over the years, the hardest place to apply the law is in the law of war. It is the hardest. It's harder than any other. But the issue before the Court is whether hostilities and war are to be declared by the President. The case has come here. It's here. And certainly one could feel comfortable, if I may dare to say so as a judge, in upholding the powers of the President and Congress to be in charge of this. There isn't any question in my mind that in terms of that commission, they have no jurisdiction. Their jurisdiction is limited to hostilities by Congress. Congress did not give them anything else. And as to the rationale of my clients, it is reciprocity. Here, as if what I've said is not heavy enough for the Court, and I apologize, I do, we may be talking here at this lecture, and I may be talking, about something that will affect the safety of American troops. It's that simple. If I say it, it means nothing. If President Eisenhower said it, and he thought that hundreds and hundreds or more of American troops were saved because they gave the same rations to the German prisoners, can we go back and imagine what that was like? And so the arguments that my clients have include John Foster Dulles, when the Geneva Conventions were adapted, he said, if 10% of American troops are saved, we have done something worthwhile here. I realize the modern world is chaotic. I understand there are people in places that could care less about this. But if it's really true that 10% of our soldiers, some in captivity as I speak, could be saved, it has happened. And Somali is an example given in the brief. We ask the Court to rise to this occasion. I dare do that. And finally, as to abstention, first of all, this circuit in A&A, Continental, was very clear that jurisdiction-shipping statutes, jurisdiction-stripping statutes, must be very narrowly construed, first of all. But I don't think you even get to that in this case, because Councilman, the case the government relies on so much, said in it that, of course, we're not talking, they cited a couple of cases, we're not talking about a situation where there's a military commission, and the military commission has no jurisdiction over the individual. Now, the government really hasn't answered that. They say that this wasn't argued before, but it's in the complaint, it's in the decision by the Court below on page 2, line 4 to 6, and page 8, line 1 to 3. Let me close by saying to the Court, and I hope you don't mind me saying this, I don't know any American who, if they had, on a given day, on a given Monday in Seattle, the ability to do something that would actually save American soldiers, I don't know anybody who would abstain, if the Court pleases. Thank you very much for allowing me to argue. Thank you, Mr. Rosenhan. If you can now put 20 minutes back on the clock. Thank you, Your Honor. If I may, I'd like to try and reserve about five minutes of rebuttal time. All right. And so just good morning. And in the 2009 Military Commissions Act, Congress legislated explicit limits as to what was triable, what was triable at all. And the question in this case is whether or not an individual has to be tried, convicted, and sentenced for a crime that Congress said was not triable before a court will rule that trying him in the first place was illegal. And the answer to that question, as this Court reviews it, should be the text of the 2009 Act and why Congress passed the 2009 Act. The 2009 Act was, by the statements of the President and the Congress, intended to be a major reform, a major overhaul of what had been, in the words of the President, legally flawed military commissions that lacked legal legitimacy in Guantanamo. And two reforms matter to this case. Two of the reforms in the 2009 Act matter to this case. The first is Section 950P, which Mikas spoke about, which is an express congressional limitation saying that for an offense to be triable, triable at all, it must have occurred in the context of hostilities. The second is Congress's decision to not reenact a bar on collateral tax against military commissions, which in the 2006 Act had been Section 950J. And so in enacting the 2009 Act, Congress both enacted limits and then made sure that those limits would not be unenforceable. You have – this is an action against Mr. McDonald, correct, the retired person? What is it that you want – what relief do you seek against him? The relief we sought in the complaint expressly is a declaratory judgment that his order from 2011, which created this military commission. Military commissions aren't courts. There's no commission that you bring a case to. Isn't that totally advisory since that was in the past and now he's retired? And I know in your last briefing you asked for damages or said, well, we wouldn't mind damages, but you had, as the government pointed out, you had previously disclaimed any interest in damages. So just as a procedural matter, it wasn't clear to me the procedural posture here. Well, actually, as you said, it's something of a peculiarity of military law, but military orders are followed in one of three – except in one of three circumstances. The order is withdrawn by an authority who can withdraw that order, has the legal authority. But Mr. McDonald can't do it. I mean, in effect, that's why the government moved to substitute because, I mean, I recognize why you're making the argument you made because of all these jurisdictional pitfalls that we have to deal with. But, you know, he cannot effect your remedy at this point. In effect, to do what you want is really a successor government function, isn't it?  Ultimately, that's a question about redressability and whether or not this case would give us complete relief as to whether it would give us any relief. Well, no, and to the question of any relief, it's that the other circumstances in which military orders aren't followed is if they direct the explicit commission of a crime, which we're not alleging here, but also if they're declared unlawful. And only in those circumstances is the order itself – do military officers have the permission to not follow an order. And I would say that that relief is actually meaningful and maybe even more meaningful than this court would suggest. I want to stay issue. It feels like an advisory opinion about what Mr. McDonald did in the past so that you can point to it as precedent to stop, I guess, Mr. Oosberg-Sanz from moving forward or something like that. Is that what you're trying to do? No, not at all. We're not asking this court, and we haven't asked this court, to have Mr. Oosberg-Sanz do anything. Ultimately, again, a military commission is created by an order, and that order is signed and comes directly from McDonald's, a personal order, and Mr. Oosberg-Sanz honestly has to do nothing. He can sit and do nothing, and this commission will proceed, much like if I'm given a traffic ticket by a police officer illegally for some reason, and I still have to go to traffic court, and there are all sorts of governmental apparatuses that are going to abide by that traffic ticket. But if I can show, and the court declares, that that traffic ticket was illegal from the get-go, well, then my need to go before all these other proceedings is alleviated. But I would also say this, too. There's no reason we couldn't have brought this as an official capacity action, and I disagree with you, Your Honor. When we made that specific footnote where we mentioned that we weren't seeking damages, it was to deal with the hypothetical that the government posed that if this were an official capacity, it would be barred by sovereign immunity. It wouldn't be. Sovereign immunity is waived by Section 702 where it otherwise applies, and under cases like Larson and Ex parte Young, it's a legal fiction to say that an officer's suit isn't against the government, but it's a legal fiction the Supreme Court has accepted. But if we agree with you that the action itself wouldn't be barred by sovereign immunity, what's your objection to basically saying really it's an action against the government? If this had to be brought as an action against the government, I think it would be in the form of an injunction against Mr. Osberg Sands requiring him to rescind the order. Because, you know, Mr. McDonald can't do anything, and it's an action against him. But what I thought you were asking is basically to say, you know, we want this referral revoked, in effect, because it's illegal, and we want this not to go forward. That's not something that Mr. McDonald can do in any capacity at this point. The government in some form could do that, couldn't it? Sure, governmental actors could do that, and if this Court sought to construe the complaint as being an official capacity action or as bringing Mr. Osberg Sands in as a party, and McDonald would remain in his personal capacity. Because, again, the problem with military orders is there is a kind of use the framework of Pennhurst, right, is that there's something we are looking backward, and I agree it was a close call. We struggled with it, but ultimately we were concerned about the order. We asked for the relief that we thought was relevant, was that this order was illegal. So let's just put that over here. Sure, absolutely. Because what I hear you saying is that one way or the other, you ought to be able to at least get through, you know, round one in court. So now we're here. Absolutely. And so what this case is about is whether or not the limits that Congress enacts into law are meaningful, particularly when Congress is reforming a statute. You had a colloquy with my friend about Section 7, and I think what that colloquy showed is they're not asking for an application of Section 7. They're asking for a fundamental rewriting of Section 7. They're saying, well, any other action, well, we all know that really should have just said any non-habeas action, any action not covered by the Detainee Treatment Act, which was first struck down and then repealed. Well, that really should be interpreted as only applying to, I guess, Section 950G, which was included in the 2009 Act as part of the reforms. And, well, it shouldn't just apply to alien, someone who's properly detained as an enemy combatant, because if we determine someone is kind of like that, this court should interpret that language. Let's say we disagree with the government on that point and say, well, it says enemy combatant. Your client was declared an enemy combatant, correct? That's correct. It's CSRT, a Combatant Status Review Tribunal. Right, I understand that. So whether other people might fall in that category, well, it seems there's very few at this point, but he certainly falls in that category. So then we'd have to go back to your other argument, which is to say that you think that it would be improper to read the statute as saying any non-habeas claim. Well, absolutely. I think that would be a significant problem. I think reading out a third of the section, which is devoted to this DTA process, would also be a pretty major problem. But I think the greater problem is it would make Congress's reforms, the two reforms I spoke about, a dead letter from the beginning. Because Congress, they mentioned that in the 2009 Act, Congress made conforming amendments that they're saying should now be read into Section 7. But I think it's notable that the one conforming amendment Congress never made was to anything to Section 7. Congress doesn't touch Section 7, but it does remove an explicit bar on collateral tax against military commissions that, assuming no question of constitutionality, if we brought this case in 2007 and assuming it was constitutional, we would be out of court and we don't dispute that. And Congress understood when it was reforming the Military Commissions Act that to bar any and all collateral tax would essentially make its own limits, its own reforms unenforceable. And I'll give you another one that is something we're more familiar with, and that's double jeopardy. Double jeopardy is prohibited by the Fifth Amendment, sure, but it's also prohibited by Section 948H of the Military Commissions Act, which says in language substantially similar to Section 950P, that no one may be tried for the same offense twice. And under my colleague's argument and under the district court's opinion, an individual who has been acquitted or has been convicted and served a sentence, and then someone like McDonald decides to order that he be tried by the military, a military commission again, under their theory, that's an unenforceable limit Congress enacted. And so that person would have to be tried again. He'd have to be convicted. He'd have to be sentenced before he could go to a court and say, hey, look at the public record. I was acquitted. I should never have been tried in the first place. Why wouldn't he have a habeas remedy? Well, the habeas problem comes from the fact that under the 2009 Act, the government has created a hard wall of separation between trial and detention. And we know that because one of the first, if not the very first, pleadings we filed in the commission was a request as to whether or not, if Mr. Noshery was acquitted, would he be released. And the government wrote a lengthy pleading saying no. Under the scheme enacted by Congress and the Secretary of Defense, detention is a completely separate matter. Detention is determined in habeas. Detention is determined by the political arms of the government. Whereas commissions are essentially this discretionary exercise that just the government is using for purposes of accountability. And so under cases like Pricer and under cases, this court I think has a case called Crawford v. Bell, which deals with a similar issue. If you're not challenging your custody, if release isn't the remedy, you can't achieve release through. Through the MCA. Under the MCA. Your client has a pending habeas case, correct? Yes, that's correct. Challenging his detention as a. So as I understand it, he has a detention habeas case. And Median, of course, made clear that he would have a right in habeas. Unlike Mr. Hamad, who's gone already. He's not in detention. And then he has this parallel MCA proceeding. That's correct. And in effect, you want us to then step in with a third federal court proceeding to basically say he shouldn't have been referred to the MCA in the first place? I think I understand that, and yes. Because ultimately this court, the district court, has jurisdiction under the federal question statute. There's no question about that. He has a cause of action that was recognized, even though he's a Guantanamo detainee. The Supreme Court recognized Guantanamo detainees can bring federal actions because Guantanamo, for all practical purposes, just is Puerto Rico. And so here we are challenging the fact that he was put into this military commission process at all. If we could have brought this as a habeas claim, if we thought we could, we would have obviously done that. Because we wouldn't be dancing around all these jurisdictional questions that have gotten thrown up. But, again, under Pricer and the whole line of cases, since the government is making a very strong claim that they've been consistent about, that the commission has no impact whatsoever on Mr. Nishiri's continued custody, habeas all of a sudden becomes much less available. And I can guarantee you had we brought this claim, I think the government's argument would have been very precisely that, because that's what they argued in the commission. And so we filed, again, what appeared to be the ready model for challenging what we were challenging. The case we looked to after we confronted this detention issue was straight, straight against A1 contractors, a Supreme Court case about Indian law. About Indian jurisdiction. Exactly right. And it was a case about whether or not Indian law applied to a claim at all, whether or not the plaintiff in that case could sue at all in a tribal court. And in that case, the defendant in the tribal court sought a declaratory judgment against the plaintiff in that tribal court, saying tribal law doesn't apply because under these federal statutes, this state highway that runs through is exempt from tribal court, the jurisdiction of tribal courts, and is exempt from Indian court jurisdiction. The Supreme Court affirmed that procedural vehicle unanimously. And ultimately on the question of abstention, which was your earlier question to Mr. Brosnahan, they said no, it would be pointless to abstain in this case because we all know today, and we can determine today as a pure question of law based on the record before us, that the law that's being applied by this inferior tribunal doesn't apply at all. And that's the same kind of analysis that this court does all the time, candidly, in cases. The question I have there, because, you know, we're quite familiar with the Indian law cases here in the Ninth Circuit, and straight in all of its progeny. But the question I have here is we now have military commission order on jurisdiction, basically saying that there's some facts that factor in. I mean, I hear what you're saying. Well, if the President didn't declare war or didn't acknowledge hostilities or did say X, then so be it, that's what it is. But military commission is saying, well, really, this isn't a straight up or down yes or no question. So in that regard, this case doesn't quite fit what Councilman does, but it doesn't not fit either. So I'm just wondering why a federal court would step in when the military court has, in effect, said, and I shouldn't say military court, military commission, I understand your distinction, that the military commission has basically said that we have a fact issue here. Well, two points on that. The first is that inferior tribunals make rulings all the time in cases such as double jeopardy, such as in straight. Juvenile Delinquency Act is, I think, another interesting parallel because it deals with a statutory right, not a constitutional right. But I think the second and overriding problem with that, and I would like to reserve the remainder of my time, is that Colonel Polge is wrong. He cites virtually no authority. And if you go back to cases from 1804 from Chief Justice Marshall through the Civil War cases that my colleague mentioned up through including this court's decision dealing with the Espionage Act in the context of World War I, up through including Hamdan v. Rumsfeld, there is a certain hyper-narrow class of claims. Again, I can think of two that are addressed in the act that go to your right not to be tried at all and for the court to say that an inferior tribunal gets to decide that. And ultimately, think about the implications of Colonel Polge's order, that you would have a panel of military officers effectively sitting as a jury, deciding when and where the United States was at war. That's profoundly troubling, not just from a strict constructionist, what the Constitution says, who the Constitution gives that power to. But we don't let the military declare their own wars for very good reason. But in that regard, I'm thinking in parallel with other criminal defendants, there's all kinds of jurisdictional issues. For example, is that person an Indian, and therefore do they fall under this act? We're back to the Indians or Native Americans. Do they fall under this particular criminal statute? And that depends, or yes or no, do you have the requisite Indian blood, et cetera. Well, the person has to go through the whole trial. It might be just flat wrong. The judge may have made a legal ruling and then it goes up and it gets appealed and it gets decided. Here, you basically have a scheme which Congress re-energized the courts, if you will, both the D.C. Circuit and the Supreme Court to look at these issues. And now you'd have a district court in the Western District of Washington making the decision on the law of war, which is not an easy question in and of itself. So why in this scheme wouldn't we let it run its course? And if he's wrong and if there is no law and if it's not a factual issue, why wouldn't we have the D.C. Circuit say that? Because I think the major reason is that what you're proposing is that my client undergo what is likely to be a 10, potentially 15-year death penalty trial, where every day he's going to be standing trial for his life. He has to go all out in defending himself. He's going to have to reveal his trial strategy, and quite possibly for the reasons this Court described in Harper, he very well may seek a plea deal, which means the federal courts will never get to review the basic legality of whether or not there is even a commission, whether or not there's a commission or just a group of people, a conference if you want to think about it that way, because he very well may plead guilty in order to save his life. Capital defendants do that all the time. And this, again, is a very narrow class of case. It's actually not a hard question because when you have the president say America is not at war and when you have the president ultimately not even say that hostilities exist until 2003, it's not a hard question. It's like double jeopardy. It's like the dates of a legislative session. But double jeopardy isn't decided until after. It's not, Your Honor. Under Abney, double jeopardy is the paradigm case of a right not to be tried, and a right not to be tried is a right not to go through that ordeal and not to have to waive all the rights that would come with going through that ordeal. And so this is a very narrow class of claims that Congress itself identified as going to triability. And if Congress used different language, we might have a different case. But here Congress talked, again, about two things, double jeopardy. Let me ask you this. For cases that can go up through various appeals in a criminal case, cases come to us on a mandamus in the middle of trial, for example, or other things, would you have that remedy to the D.C. Circuit? No, we do not think we do. The D.C. Circuit's jurisdiction, the post-trial jurisdiction created by 950G, is that the D.C. Circuit can review the judgment and sentence of a commission as approved by the convening authority. And in a case called United States v. Cotter, the D.C. Circuit held that by virtue of that limitation on its jurisdiction, essentially requiring an affirmative act by the convening authority effectively to certify it for appeal is a good analogy, I think, that it has no interlocutory jurisdiction of any kind. Are you saying that it might be able to be certified so that it would come up as other issues come up in a criminal trial that go up on appeal to a circuit? No, it wouldn't, Your Honor. I'm sorry if I misspoke. The jurisdiction is limited to a final judgment as rendered by a commission, as approved by the convening authority, and then up through this intermediate panel. Thank you. Thank you, Your Honor. Sidney Foster. May it please the Court, Sidney Foster for the government. Your Honors, there are, again, in this case, multiple independent grounds. This Court needs to only reach one of those grounds and may affirm on any of them without reaching the other two grounds. The problem with the theory that plaintiff is putting forward in this case is that Congress has addressed very specifically how judicial review should take place with regard to military commission decisions. Congress enacted a comprehensive statute at the Military Commissions Act of 2009 in which it provided that judicial review must follow a particular path, administrative remedies must be exhausted, and then review would take place in the D.C. Circuit. Part of why Congress established such a scheme is that it wanted to have a consistent line of precedent in the D.C. Circuit, and it didn't want to face the problems that Your Honors were referencing about having different courts throughout the country ruling on these military commission issues, creating inconsistent precedent, and then resulting in confusion for the military commissions as to what law to follow. Another part of why Congress did that was to develop some expertise in the military commission system and in the D.C. Circuit itself with respect to these questions that are unique to this setting, the law of war questions and the law of armed conflict, and the D.C. Circuit was particularly well-suited for that because of its experience in the military commission context. So judicial review is available of the substantive claim that plaintiff is asserting here. It's just not available in the district court, and it's not available at this point in the proceedings. So he has to go through an entire trial, potentially get convicted in that trial, then appeal through the other military layers, and then go to the D.C. Circuit. To what Mr. Brosnahan says is clear because the President said we weren't in hostilities. Right. I mean, you know, obviously we disagree with the kind of position on the substantive question, but Your Honor, the point is that this is not, as Your Honor was referencing, this is not uncommon. If a criminal defendant files a motion to dismiss an indictment and that motion is denied, then typically that defendant has to wait until any final conviction to raise those issues in a court of appeals, subject only to exceptions in the collateral order doctrine, which this court knows is very narrow. And similarly, a similar system is in play in the administrative context. If an administrative agency proceeds against an individual or company in enforcement proceedings, and the company that is being proceeded against files a motion to dismiss the complaint and that's denied, then again, the Supreme Court has held that review must await the final decision. So this is not atypical for someone to have to wait. I'd like to note, too, just to correct one thing, is that the issue at here, the substantive issue that is at issue here about the interpretation of 10 U.S.C. 950 PC that issue was described by opposing counsel as a jurisdictional issue and as a right not to be tried, and I want to just clarify that. It's not a jurisdictional issue, nor does it set out a right not to be tried to a plaintiff that's akin to the right not to be tried under double jeopardy and so forth. Instead, it's simply an element of the offense that must be proven at trial, and that's why the military judge held it as he did. This is an element for each of the three offenses, or sorry, I think nine offenses here. This is an element that will be, that the prosecution will have to prove at trial beyond a reasonable doubt. If you look at the charge sheet, you'll see that it's charged for each particular offense. But in order to have Mr. McDonald make the referral, he had to make that determination, correct? Why isn't it a threshold determination? That's right. So when the convening authority refers charges, he must make a determination under the rules, Rule 601 of the military commission, that there's reasonable grounds to believe that each element of the offense, that there's evidence that that can be established. And so he necessarily found that there were reasonable grounds here. But, you know, this kind of challenge happens all the time in the criminal and administrative context, that, you know, an individual defendant doesn't think there is perhaps enough evidence to go forward on, you know, a particular element of a crime. Files a motion to dismiss, it's denied. What happens is the usual course is that then we go to trial, and, you know, the defendant can assert the arguments again at that stage of the proceedings, and then upon any final conviction, then there is review available. I'd note, too, that, you know, to the extent that there's any court that would have jurisdiction over some kind of interlocutory appeal, if there were some kind of right not to be tried, which, as I've said, is not at issue here, then the court that would have jurisdiction over some kind of appeal would be the D.C. Circuit in relationship to its mandamus jurisdiction under cases like telecommunications research in the D.C. Circuit that I think we cite in a footnote. The remedy is not to all of a sudden go to a district court in a different circuit and seek judicial review at that stage in the proceedings. In your view, the final judgment language that set up this system could be overridden by a mandamus to the D.C. Circuit, and the government wouldn't oppose that on jurisdictional grounds. No. To be clear, like, we haven't briefed the issue of whether mandamus jurisdiction would be available. My point is simply that if there were any court that would have jurisdiction over an interlocutory appeal, then it would be the D.C. Circuit because it has exclusive jurisdiction over final judgments. It would be the D.C. Circuit in relationship to its exclusive jurisdiction. And I'll note in the Cotter case, just to clarify, the court there held that review was not available. It didn't decide whether the collateral order doctrine applies. It simply held that the requirements were not satisfied in that case. I'd like to, if the court has further questions about the 2241E2 issue, I'm happy to answer those. I want to make one point about that, and then I wanted to move on to the preclusion. Well, I think we left one question unanswered. Yes. With the distinction between damages and injunctive relief. Can you address that? Yes, Your Honor. This case doesn't raise the question of Congress having wholly barred any declaratory or injunctive relief, which I understood to be kind of the premise of your question in the last, with respect to the last case. Here, there is judicial review available. It's just not available in the district court right now. Judicial review is instead available in the D.C. Circuit. So there are no constitutional problems raised by this case, either, and plaintiff hasn't suggested otherwise asserting an argument like the one that was asserted in Hamad. And just in reference to Your Honor's comments about worries about having to rewrite the statute substantially, I just want to emphasize that the Supreme Court itself has emphasized that courts must maintain as much of a statute as possible if it stands independently and makes sense on its own. And I think here the cross-references that go to provisions that no longer exist, as I've explained, conceptually it's very clear that the Congress who enacted the Military Commissions Act of 2006 would want to continue to bar actions like this and actions like the Hamad action, notwithstanding the slight changes in the substituted judicial review that's now available under the statute. I'm happy to answer further questions about that. But if there are no further questions, I'd like to address our second argument, that the Military Commissions Act of 2009 precludes judicial review independently of 2241E2 and independently of councilman abstention because it provides a comprehensive scheme of administrative and judicial review for military commission decisions, evincing congressional intent that those methods for challenging military commission decisions are exclusive and should not be supplemented by courts through district court actions like the one at issue here. If the court looks at the particular provisions, it's very clear that they are exhaustive and detailed. Here the convening authority referred these charges. Plaintiff had an opportunity to ask the military judge to dismiss the charges based on his substantive argument. He did so. The military judge rejected that argument. And so now the next step in the process for plaintiff is to reassert those arguments at trial and try and convince the military commission that the evidence doesn't establish that the offenses here were committed in the context of hostilities. In the event that the commission convicts him on any or all of the charges, then plaintiff's remedy will be to seek relief from the convening authority. And then after that, he can seek relief from the U.S. Court of Military Commission review. And then after exhausting that remedy, then he has the opportunity to seek relief in the D.C. Circuit, which the statute specifically provides has exclusive jurisdiction over such challenges, and the statute explicitly provides that exhaustion of the remedies must occur before the D.C. Circuit can review the case. This careful attention to the process that plaintiff must go through, including, you know, requirements concerning exhaustion of remedies and provisions addressing when interlocutory review is available, manifestly suggests an intent that other challenges simply should not be allowed, that all challenges should be channeled to the D.C. Circuit for these purposes. If the court has no further questions on that, let me just address one other point about 2241E2, and then I'll go back to the councilman abstention argument. But I want to address plaintiff's argument that somehow we should read a lot of significance into the fact that the Military Commissions Act of 2009 did not include former Section 950JB, which duplicated 2241E2 to some extent with regard to military commissions. I think there are two components to plaintiff's argument, and I think they're both wrong. The first component is that plaintiff suggests that when the Military Commissions Act of 2006 was enacted and included that former 950JB, then because that provision kind of barred, basically, challenges to military commission decisions outside of the scope of that statute, that surely 2241E2 could not have also barred those actions. It's a surplusage canon kind of argument. That's wholly without merit. First of all, as we explained, you know, the surplusage canon is just a rule of thumb, and it's trumped by the plain language. And here there can be no question that the plain language of 2241E2 bars this action. That language says that actions, that non-habeas actions are barred if they're relating to any aspect of, among other things, the trial of certain aliens, of which a plaintiff is one. That plainly covers the actions at issue here. And if there were any question about whether the 2241E2 originally kind of barred challenges to military commission decisions, I think if we look at the history that we were discussing of the enactment of the statute, the answer becomes clear, because there was, when the Military Commissions Act of 2006 was enacted, there was an express exception for the judicial review provided in 1005E3 of the Detainee Treatment Act, which was the judicial review for military commission decisions. So, obviously, there would have been no need for inserting that exception if the statute didn't otherwise generally bar challenges to military commission decisions. Now, the second part of Plaintiff's argument there is that somehow we should read something significant into the fact that Congress didn't include the former 950JB when it enacted the Military Commissions Act of 2009. That's the dead letter argument that the reforms would? That's exactly, as I understand it, that's exactly right. And I think, you know, there are several responses to that. One is that by not reenacting 950JB, that didn't somehow change the meaning of 2241E2, which already very clearly bars the kinds of actions that are at issue here. And, you know, second, we have to keep in mind what Congress was doing when it enacted the Military Commissions Act of 2009. What it did was it replaced entirely all of Chapter 47A, governing military commissions, with a whole new set of provisions. And it did not focus specifically on this former 950JB. Indeed, reading the omission of former 950JB to mean what Plaintiff says it means would be very odd given the very reticulated scheme for administrative and judicial review that Congress provided for in the Military Commissions Act of 2009. And you would think that if Congress were meaning to suddenly open up the district courts to challenges to military commission decisions, that the legislative history might have said something about it, but it's instead silent on that question. So it appears from all of these circumstances that Congress didn't think there was a need to reenact former 950JB because, you know, the work that was being done by that statute was already covered by 2241E2, and thus there was no need for that provision. I'd like to address then the councilman abstention question as well. That, of course, is yet a third independent basis for this court, that this court could use to affirm the district court's judgment. As the Supreme Court held in Hamdan, councilmen held that federal courts should generally abstain from intervening in court-martial proceedings based on two considerations of comity. The principal consideration of comity was a need to respect an independent system of military courts and review procedures created by Congress, a critical element of which was reviewed by civilian judges. Now that comity consideration applies fully here because the military commission system was created by Congress and it provides for review by civilian judges, in fact, by Article III civilian judges. In the councilman itself, both of those prongs were relating to servicemen, and in Hamdan the court chose not to extend it to the alien detainee category and seemed, in fact, to discourage doing that. What would be the strongest basis for extending it into this new context where there's no direct support from the Supreme Court on that? Your Honor, I would disagree, actually, that Hamdan discouraged that this could apply in the military commission context and, in fact, explicitly left open the possibility that councilman abstention could be appropriate in the military. It said on the battlefield, but we're not on the battlefield here, so I'm not sure how that helps us. Right, that was an example that the court provided, but I don't think it was meant to be an exclusive list. That's not very strong support, though. Well, Your Honor, if we look at... Well, we don't know. Maybe on the battlefield it would be different, but nothing to prove the D.C. Circuit's determination not to extend it to alien detainees. Yeah, I think if we look at the court's analysis, its primary reason for not extending councilman abstention in the Hamdan case was that the statute before it did not have the characteristics of the Military Commissions Act of 2009 that I've just described. The Military Commissions... Is that the strongest, the sort of negative pregnant that you can sort of tease out of the civilian review, or is there anything stronger than that? Well, I do think... I think the primary interest that Congress was concerned about, or that the court was concerned about in councilman is that there's been a whole separate system created by Congress to address claims there in the court-martial context, and that there was a need to let that process play out before courts start intervening. Part of the rationale of councilman abstention and abstention in other contexts is that we could have problems with inconsistent rulings, interference in parallel systems, as Your Honor was pointing out, and those problems could arise in spades in this context. I mean, if we look at what would happen here, for example, if the district court were to proceed and address the substantive question at issue here, there would be a trial in the district court over kind of whether this element of the offense was satisfied. Meanwhile, of course, the Military Commission case is proceeding to trial as well, and those same issues will be decided before the Military Commission. Mr. Nashry argues, I think, one of his concerns is that he could be in this limbo forever. You know, they could start, stop, and you don't really have kind of an expeditious regular process that's guaranteed. Your Honor, that is his argument. I think, you know, the response to that is that this is the system that Congress enacted and put into place. Congress chose to make judicial review available at the end of the system, and as I said, it's not unusual for that to be the way that the system plays out, typically review of interlocutory decisions like this or issues like this are reviewed after final judgment, and individuals don't get to assert any interlocutory appeal that they want to. I just want to go back, too, though, and point out that there's another very important way in which another very important function served by councilman abstention in this context, which is even stronger than in councilman, which is if you look at kind of what would be the systemic effects if district courts around the country were to start entertaining claims like this one, what we would have is that we'd have district courts around the country ruling on issues relating to military commissions. There would eventually be some rulings by the circuit courts of appeals. We would have, you know, inevitably at some point some inconsistent precedent addressing particular issues, and then the military commission would face the difficult question of what circuit do they follow. I guess that's why it wasn't in Hamdan where the Supreme Court basically gave the writing proviso to Congress that these should be concentrated in the D.C. Circuit. Exactly, and so that's what Congress did in the Military Commissions Act of 2009, and that makes sense to channel all this review to the D.C. Circuit. They can then develop one single line of precedent. They can themselves develop some expertise in the area of law of war, and as I said, they already have some expertise in related fields because of their habeas jurisdiction as well. So, you know, that's actually a little bit different from councilmen because in councilmen, the military, sorry, in the court martial context, the review that occurs is actually reviewed by civilian Article I judges, and so here we have instead review occurring in Article III courts in the D.C. Circuit. So it makes a lot of sense to channel all of these cases to the D.C. Circuit so that we can have one consistent line of precedent. And, you know, another central rationale for these abstention cases is that, you know, by waiting to decide questions like the ones that are at issue here, federal courts can, you know, capitalize on the expertise that would develop as a result of, or sorry, that can rely on the expert opinions of individuals and entities that Congress created or appointed to become experts in this area of armed conflict and laws of war. So Congress here created military courts to become experts, the convening authority, the U.S. Court of Military Commission review. And by channeling all review to the D.C. Circuit, then it, you know, meant for the D.C. Circuit itself to also become expert in these issues. And of course – When I read those cases about military and abstention because of military courts, one of the things that seems to flow through all the Supreme Court cases is this principle that the justice would be, you know, without undue delay. And if we were to abstain here on the theory that you have a process and then you're in the military commissions and the, you know, counsel for Mr. Nashry says you may not even be able to go to the D.C. Circuit on a mandamus, you might – I mean, what if he's lost in the bowels of the military commission system for years on end? Do you think then you'd have – do you think that abstention can be contingent? On kind of the length of time that someone might have to wait to have a judicial review? Right. Well, in other words, if we were to determine that abstention is appropriate, do you think that we could make that abstention contingent? Because if he can't go to the D.C. Circuit and he's just stuck there and that's nothing happening, that wouldn't be a very good ground to abstain on, would it? Well, I think it would, Your Honor, because the functions kind of served by abstention doctrine would fully apply in the circumstances that you're positing that we should allow the military courts, the process to work itself out to the extent that there's no – But every time we see those cases, it says with reasonable promptness. I'm not – I mean, the councilman itself noted that there is an exception to the abstention doctrine if there would be some kind of irreparable harm worked by waiting to issue a decision. But councilman was very clear that the harm attendant to just waiting to let the process play itself out is not the kind of harm that constitutes irreparable harm for purposes of that exception. So I think councilman definitively answers the question that Your Honor is positing. And again, to the extent that it would make sense for there to be interlocutory review here, the answer is to go to Congress and ask for provisions providing for interlocutory review. It's not for this court then to read exceptions into – certainly not into 2241E2. That clearly bars this action and there's no such exception in the Military Commissions Act of 2009. To the contrary, it provides for interlocutory review in some very narrow circumstances, not suggesting that it's not available elsewhere. But again, you know, at the end of the day, to the extent that there were any court that would have jurisdiction, you know, over some kind of interlocutory challenge, it would have to be the D.C. Circuit and not a district court, you know, outside of that circuit. If the court has no further questions, we would just ask that you affirm. Thank you. All right. We need to give – how do you pronounce your name? Paradis. Paradis. I gave you the French pronunciation, so I guess that was right. So let's give him four minutes rebuttal.  In the 2006 Act, barred all – every collateral attack whatsoever against whomsoever against military commissions. That was Section 950J. Congress repealed that by enacting the 2009 Act. And if you look at the legislative history, I don't believe – we may not have included it in the brief, but the Congressional Research Service has a chart where they compare the 2006-2009 Act and I believe also the Uniform Code of Military Justice. And in that, it looks to 950J, 950G, which they spoke about in the 2006 Act, and we can provide the court with a copy of that after the hearing, 950J, 950G saying barring all collateral review. Section 950, the same provision, the parallel provision of the 2009 Act, not barring all collateral review. Congress knew what it was doing, and that's what this case is about. This is about Congress knowing what it's doing and doing it. My colleague spoke about this as if this was an element of the offense, but Congress didn't make it an element of the offense. I challenge this Court to look at the elements of the offense in the Military Commissions Act of 2009. It says nothing about hostilities. It says things about unlawful enemy combatants or unprivileged belligerents, but nothing about hostilities. Instead, Congress enacted a specific statute that didn't say someone is not liable if an offense did not occur in the context of hostility. They did not say that someone is not convictable if it did not occur in the context of hostilities. It said it is not triable. And when Congress uses that word, that word carries a lot of meaning. It applies in immunities, in situations dealing with immunity, which are always dealt with on an interlocutory basis, and it deals with issues like Juvenile Delinquency Act, like double jeopardy, like the Speech and Debate Clause, like preemption of state or tribal law, where federal courts hear those cases at the first opportunity because otherwise you are writing out of the statute what Congress insisted that be in it in order to confine these ad hoc, come-and-go military tribunals to their specific purposes. Because, again, under- Did anyone attempt an interlocutory or mandamus appeal after the military commission ruled on jurisdiction? No, we haven't appealed on mandamus or otherwise. But on the mandamus avenue, historically, and the courts, and I could cite a million cases for this, the availability of extraordinary discretionary relief in some form doesn't divest a district court that has a clear jurisdictional, clearly has jurisdiction, as is the case here. So the fact that we could seek the extraordinary remedy of mandamus is not preclusive of the federal question statute. No, I'm not saying it's preclusive. I'm just asking if it- No, we haven't. But others- I'm sorry. But others have. And to my knowledge, the D.C. Circuit denied one of those cases on the grounds that post-trial review is required. It was a per curiam order. And, in fact, I was kind of surprised by the government's strenuous arguments in favor of mandamus jurisdiction in the D.C. Circuit because I could point the courts to the government's briefing in In-Re-Ha-Sa-Wi, which, again, we'd be happy to provide the court, where the government argues a variety of reasons why mandamus actions can't occur from military commissions. The Court of Military Commission Review, which is that military level of appeal, actually even has in their rules all petitions for extraordinary relief will be summarily denied. It's part of their rules. We didn't come here because this was the most convenient forum, candidly. We came here because this was the only forum. And if this court affirms the district court, this court will be holding that Congress created a legal black hole in Guantanamo, that it doesn't matter if Congress reforms the law. It doesn't matter if Congress says certain things are tribal because individuals within the Department of Defense, sui sponte, on their own view of what would be expedient, can put an individual before a military trial when Congress said that military trials should not be used and that when the President of the United States said America is not at war. Ultimately, if this court denies this claim and kicks us out of court, it is creating a black hole in Guantanamo and in the Military Commissions Act. If there are any further questions, I'd be happy to answer them. Thank you. I would like to thank all counsel. The cases have been very, very well briefed and very, very well argued. The case of Nashree v. McDonald is submitted and we're adjourned for the morning. All rise. This court for this session stands adjourned.
judges: Alarcon, McKeown, Ikuta